UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DEVINE FELDER                                CIVIL ACTION NO. 06-cv-0911

VERSUS                                       JUDGE HICKS

WARDEN OF DAVID WADE                         MAGISTRATE JUDGE HORNSBY
CORRECTIONAL CENTER

**REPORT AND RECOMMENDATION**

**Introduction**

A Bossier Parish jury convicted Devine Felder ("Petitioner") of possession of a firearm by a convicted felon. The trial court imposed a 12-year sentence. The conviction and sentence were affirmed on direct appeal. State v. Felder, 823 So.2d 1107 (La. App. 2d Cir. 2002). Petitioner later filed a post-conviction application on the grounds that the firearm used to obtain the conviction was the product of an illegal seizure and that his trial attorney should have filed a motion to suppress. The state trial court held an evidentiary hearing and issued a reasoned decision that denied relief. Writ applications to the state's higher courts were denied, and Petitioner now presents his post-conviction claims in this federal petition for federal habeas corpus relief. It is recommended, for the reasons that follow, that the petition be denied.

**Standard of Review**

The claims presented in this petition are properly reviewed under 28 U.S.C. § 2254(d)(1). That statute provides that a federal court may not grant habeas relief with

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Under the "contrary to" clause of 28 U.S.C. § 2254(d)(1), a federal habeas court may grant the writ only if the State court (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) decided the case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519 (2000).

Under the "unreasonable application" clause – the clause that applies to most claims – a federal court is permitted to grant the writ if the State court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the State court was incorrect in its application of a federal constitutional principle, this alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).

**Fourth Amendment and Stone**

Petitioner's first claim is that the gun introduced as evidence at his trial was the product of a Fourth Amendment violation. A federal habeas court is generally barred from

reviewing Fourth Amendment claims. <u>Stone v. Powell</u>, 96 S.Ct. 3037 (1976). In <u>Stone</u>, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 96 S.Ct. at 3037. To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. <u>Stone</u> bars federal habeas consideration of that claim whether or not the defendant employs those available processes. <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002).

Louisiana provides a process to file and fully litigate Fourth Amendment issues in criminal cases. Thus, Petitioner's Fourth Amendment claim that the gun should be suppressed is barred from federal habeas review. But the <u>Stone</u> doctrine does not prevent Petitioner from pursuing an ineffective assistance of counsel claim based on his attorney's failure to file a motion to suppress the challenged evidence. <u>Kimmelman v. Morrison</u>, 106 S.Ct. 2574 (1986).

**Ineffective Assistance of Counsel**

    **A. Generally**

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard


Page 3 of 13

of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 2068.

**B. Failure to Move to Suppress**

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is *meritorious* and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman, 106 S.Ct. at 2583 (emphasis added).

The Fifth Circuit addressed a similar Strickland claim three years after Kimmelman was decided. The Court did not cite Kimmelman, but it articulated a similar prejudice standard that required the habeas petitioner to show that a motion to suppress, if filed by counsel, would, or at least in all likelihood would, be granted. Kirkpatrick v. Butler, 870 F.2d 276, 283 (5th Cir. 1989). In Kirkpatrick the Court found that the Fourth Amendment claim in question "was genuinely a close call" but:

> Despite the difficulty of the fourth amendment issue, we do not find clearly erroneous the district court's judgment that had a motion to suppress the evidence seized from Kirkpatrick's apartment been filed, it would have been denied; the items seized from the apartment would, in all likelihood, have been

admitted into evidence, and the outcome of the trial would have remained unchanged.

Id.

The Fifth Circuit has continued in later decisions to equate a "meritorious" motion to suppress with one that would or at least likely would have been granted, as opposed to a motion for which there is merely some good faith basis to pursue. See, e.g., Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005) ("We have held that 'counsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance.'"); Martin v. Maxey, 98 F.3d 844, 848 (5th Cir. 1996) (same); and U. S. v. Alanis, 88 Fed. Appx. 15, 22 (5th Cir. 2004) ("[I]f he succeeds on his Sixth Amendment claim, he will have established the validity of his Fourth Amendment claim because the merits of his Fourth Amendment claim are an element of his ineffective-assistance-of-trial-counsel claim.").

**Relevant Testimony**

### A. Officer Warren

Bossier City Police Officer Tyrone Warren testified at trial that he was on duty with the Street Crime Interdiction Unit on a December night around 9:00 p.m. when he heard a radio call that there was a man with a gun and about 15 black males and females fighting in the 2100 block of Scott Street. A couple of patrol units were dispatched to the call. Officer Warren was not dispatched to the call, but he was in the area.

Officer Warren soon saw Petitioner, whom he did not know, jogging across the street near the well-lighted parking lot of the Action Central Lounge. Officer Warren, who said he was not sure Petitioner had anything to do with the Scott Street events, pulled into the parking lot behind Petitioner, who stopped running. Warren testified that he then called Petitioner towards his vehicle, as Warren remained inside. Petitioner approached with both hands in his front pants pockets. Warren told Petitioner to stay in front of the car as Petitioner walked toward it. Petitioner stopped in front of the police car. Officer Warren testified, "I asked where he -- where he was coming from or something like that and he took off running." Petitioner, according to Warren, also said something to the effect that he didn't do anything.

Officer Warren testified that he pursued Petitioner who, when he was about 20 yards from the police car, threw down a gun along a nearby fence line. Warren paused briefly to observe that it was a black handgun, and he continued the chase. Petitioner ran another 75 yards or so, ran out of breath, and was detained by Officer Warren. The gun, a Lorcin .380 caliber pistol, was retrieved and logged as evidence.

**B. Petitioner**

Petitioner testified at trial, but that testimony was not included in the excerpts of the state court record submitted by the district attorney. The court's order (Doc. 12) to produce the state court record asked for a "certified copy of the state court record, including transcripts of all proceedings held in the state courts," plus "all briefs or memoranda of any

party," and all state court dispositions. The pages of the record are to be "securely bound together and numbered consecutively."

It is evident that the district attorney filed only a portion of the state court record, and the pages are not numbered, so record citations are not possible. The court, perhaps more often than prosecutors realize, resolves difficult issues of timeliness, procedural bar, and exhaustion (often in favor of the state) that were not even raised or acknowledged by the parties and that cannot be resolved without the entire record. It is, therefore, critical that prosecutors honor the court's order to produce the entire record.

Petitioner does not suggest that his trial testimony is important to the suppression issue, and the record does include Petitioner's testimony from an evidentiary hearing. It appears, therefore, that this petition can be resolved based on the partial record submitted in this case.

The state court granted an evidentiary hearing on the post-conviction application, and petitioner waived his statutory right to counsel. He took the stand and testified that he was crossing the street, not committing a crime at all, when Officer Warren stopped to ask him where he had come from and what he was doing. Petitioner testified that he told Warren he did not do anything at all and was just coming from his "girl's house." Petitioner continued, "So, therefore, since I was still at liberty and had a right to be left alone, I chose to go on." Petitioner added that "it don't matter if I ran, skip or hop away."

Petitioner testified that Officer Warren pursued him as he ran and, after about 20 yards, Warren yelled, "You are under arrest." Petitioner questioned what possible reason the officer could have to arrest him. He denied that he possessed or abandoned any firearm during the pursuit.

The petitioner was represented at trial by Mark Manno, an attorney with the Indigent Defender Board. Petitioner testified that he asked Manno whether he could suppress evidence based on perceived illegalities related to the arrest. No motion to suppress was filed, and the case went to trial. Petitioner complains that Mr. Manno did not object at trial based on the perceived Fourth Amendment violations.

**C. Defense Counsel**

Attorney Mark Manno testified that he was assigned to defend Petitioner. As he prepared the defense, Manno testified, he read the police reports and did legal research on the possible merits of a motion to suppress. Manno testified that he was convinced by the decisions in State v. Tucker, 626 So. 2d 707 (La. 1993) and State v. Harris, 613 So.2d 807 (La. App. 4th Cir. 1993), cases involving similar facts where evidence was abandoned, that there was "no merit whatever" in filing a motion to suppress. Manno testified that he also attempted to obtain from Petitioner relevant facts related to the case.

**Law on the Suppression Issue**

Had Petitioner's prosecution been in federal court, there would be no basis to move to suppress because of the holding in California v. Hodari D., 111 S.Ct. 1547 (1991). That

case arose when police officers on patrol in a high-crime area in an unmarked car rounded a corner and saw four or five youths huddled around a red car parked at the curb. When the youths saw the officers' car approaching, they took flight in different directions. The red car left at high speed. The officers gave chase, one in a car and the other on foot. Hodari was scrambling through alleys and streets and did not see the officer on foot until the officer was almost upon him, whereupon Hodari tossed away a small rock. A moment later, the officer tackled Hodari and handcuffed him. The discarded rock was found to be crack cocaine.

The Supreme Court held that the Fourth Amendment's protection against unreasonable seizures is not triggered until the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen. The question became whether the officer's pursuit qualified as a show of authority calling upon Hodari to hault, even though Hodari did not stop in response to that show of authority. The Court held that it did not. Hodari was not seized until he was tackled, so the cocaine abandoned earlier was not the fruit of a seizure and not subject to suppression.

The Supreme Court of Louisiana has sometimes interpreted the Louisiana Constitution to afford greater individual rights than are guaranteed by the federal Constitution. That happened in <u>State v. Tucker</u>, 626 So.2d 707 (La. 1993) when the Court addressed the effect of <u>Hodari D.</u> on Article I, Section 5 of the Louisiana Constitution.

The <u>Tucker</u> court held that an individual is "seized" with the meaning of the Louisiana Constitution when he is either "actually stopped" or when an actual stop of the person is

"imminent." Tucker agreed with Hodari D. that an actual stop has not occurred when a police officer yells "Hault!" at a fleeing form that continues to flee. Thus, an individual has not been actually stopped unless he submits to a police show of authority or he is physically contacted by the police. Tucker, 626 So.2d at 712.

The Tucker Court then turned to the "imminent actual stop" scenario, through which Louisiana law affords greater individual rights than the federal Constitution. The focus, the Court held, must be on the degree of certainty that the individual will be actually stopped as a result of the police encounter. The degree of certainty may be determined by examining the extent of police force employed in attempting the stop. An actual stop is imminent only when the police come upon an individual with such force that, regardless of the person's attempts to flee or elude the encounter, an actual stop is "virtually certain." 626 So.2d at 712.

The Court listed non-exhaustive factors to be used in determining whether the force was virtually certain to result in an actual stop. Factors are: (1) the proximity of the police to the individual at the outset of the encounter; (2) whether the individual has been surrounded by police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in cars during the encounter; (5) the location and characteristics of the area; and (6) the number of police officers involved in the encounter. Tucker, 626 So.2d at 712-13.

**State Court Ruling**

Judge Bruce Bolin, after conducting a hearing, issued a written decision. He summarized the testimony, recited the Strickland standard for assessing ineffective assistance claims, and addressed the lack of merit that a motion to suppress would have under Tucker. The six factors noted above were considered, and the judge pointed to post-Tucker decisions in which the Supreme Court of Louisiana has reversed lower court decisions that too lightly held that an actual imminent stop had occurred. Nothing in the record, Judge Bolin noted, indicates that Officer Warren came upon Petitioner with such force that an actual stop was virtually certain. Thus, counsel was not ineffective for failing to file a motion to suppress. The state appellate court, with a one-sentence ruling, denied Petitioner's writ application. The Supreme Court of Louisiana stated that a writ application was "Denied."

**Analysis and Conclusion**

Neither party argues that Tucker was not the relevant Supreme Court of Louisiana precedent at the time of Petitioner's trial. There is no basis to determine that Petitioner was actually stopped, and there is no good-faith argument that there was an "imminent actual stop" as explained in Tucker. Petitioner's encounter involved a single officer who was inside his car when Petitioner bolted in the middle of the night in an urban area. There is no indication Officer Warren held a weapon on Petitioner, and there was no guarantee that Warren would prevail in the foot chase.

Attorney Manno testified that he reviewed Tucker in deciding that a motion to suppress would lack merit, and he was correct. The application of the law to the facts in Tucker lends further support to that conclusion. That case began when 10 to 12 marked Shreveport police vehicles carrying 20 to 30 officers converged on an arcade at 10:30 p.m. Two officers in the lead car saw Mr. Tucker and another man standing huddled by a parked car outside the arcade. When the two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out, while simultaneously ordering the two men to "halt" and "prone out." Mr. Tucker moved several steps toward the rear of the arcade, tossed away a plastic bag (containing marijuana), and then obeyed the command to prone out on the ground.

The demonstration of force in Tucker was much greater than that presented in this case, and the Supreme Court of Louisiana held that it was "far from 'virtually certain'" that an actual stop would occur, especially considering the darkness, the urban area, the lack of weapons being drawn, and the several feet of lead that Mr. Tucker had between himself and the officers. Both Attorney Manno and Judge Bolin were correct in their assessment of this case. Most important for current purposes, the state court's considered decision of this case, after a full evidentiary hearing, was not an objectively unreasonable application of Strickland, made applicable by Kimmelman, so federal habeas relief is not available.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of September, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE